UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| WARREN L. ELLIS, SR., | : | Bankruptcy No. 05-39345DWS |
| | : | |
| Debtor. | : | |

# OPINION

**BY: DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court is Debtor's Motion for Continuance of the Stay Beyond 30-Day Period (the "Motion") and the Objection of ABN Ambro Mortgage Group. Inc. ("ABN") and the Chapter 13 trustee (the "Trustee") thereto.[1] The focus of this bankruptcy case is certain residential real estate located at 425 W. Abbotsford Avenue, Philadelphia, PA (the "Property") which Debtor lost as a result of a sheriff's sale conducted on November 1, 2005 and now seeks to recover. This case is Debtor's third bankruptcy case, the last one having been pending within the year preceding the filing of the instant petition on November 21, 2005. Pursuant to 11 U.S.C. § 362(c)(3), in such case the automatic stay terminates by operation of law thirty days after the filing of the petition unless extended. For the reasons that follow, an extension is not warranted in this case.

---

[1] Debtor does not state whether he seeks to extend the stay as to all creditors or merely to ABN. As Debtor's counsel states that he has served all creditors on the Matrix, perhaps he seeks the former. If so, the Chapter 13 trustee has participated in this contested matter and objects on their behalf.

**BACKGROUND**

At an evidentiary hearing held on December 13, 2005, the following facts were elicited from Debtor. Debtor filed his first bankruptcy case on July 30, 2004. Exhibit M-2. ABN held a mortgage on the Property to secure a loan made to his son.[2] Debtor acknowledged his failure to make mortgage payments to ABN in that case but claimed they began "after I became aware of what was going on." His explanation of the missed payments was unintelligible. Although ABN resolved its motion for relief from stay with a stipulation, Exhibit M-3,[3] the bankruptcy case was dismissed shortly thereafter on a Trustee's motion for Debtor's failure to attend the statutory first meeting of creditors.[4] While Debtor acknowledges that his address for court mailings was correct, he nonetheless claims he had no notice of the § 341 meeting and his failure to attend was attributable to lack of advice from his attorney Michael Kutzer, Esquire ("Kutzer"). I take judicial notice that

---

[2] His son borrowed money to purchase a house at 1746 York Road, Wyomissing, PA. ("Wyomissing Property"). The ABN mortgage provided additional security for that loan.

[3] The Stipulation acknowledges that Debtor made no post-petition payments to ABN, i.e., August through October 2004.

[4] I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

While a court may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, In re Augenbaugh, 125 F.2d 887 (3d Cir. 1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." In re Indian Palms Assoc., 61 F.3d 197, 205 (3d Cir. 1995) (*citing* Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules).

the notice of the § 341 meeting evidences service on debtor at the Property, his Philadelphia residence.  Doc. No. 11.

Debtor's next case was filed on March 7, 2005, also by Kutzer.  In this case, Debtor gave his actual address as the Property but his mailing address as 1746 York Road, Wyomissing, Pennsylvania.[5]  Again ABN filed a motion for relief from stay alleging Debtor's failure to make post-petition payments for the months of April and May.  Relief was granted on July 26, 2005 based on the record made and Debtor's failure to appear.  Exhibit M-5. Although Kutzer filed an answer contesting the motion, Debtor again avers he did not appear because he had no knowledge of the hearing.  It appears that service was properly made at the mailing address although it may be that Debtor had been evicted by then. The motion was granted and served on Debtor by the Bankruptcy Noticing Center ("BNC") at both addresses. No reconsideration was sought. About the same time the Trustee filed a motion to dismiss for failure to make plan payments.  A certificate of service by the Trustee indicates service of the motion on Debtor at the mailing address in Wyomissing. Doc. No. 29.  Had he appeared at the hearing, the record would have established that he had not made the June trustee payment. Exhibit D-2.  With no appearance and a payment default, the Trustee's motion was granted,  and the case was dismissed on September 15, 2004. Debtor again claims no knowledge of the case activity, stating that he did not learn of the

---

[5] The Wyomissing address is the location of his son's residence.  A motion for relief was filed by the servicer of the mortgage on the Wyomissing Property (represented by the same counsel as counsel for ABN) who had purchased that property at sheriff's sale on February 11, 2005 and sought to evict Debtor. It was granted on May 24, 2005 as unopposed.

dismissal until it was brought to his attention in late October. That testimony is simply incredible. While the Trustee's certificate of service only reflects the mailing address, the BNC's notice shows mailing of the dismissal order on September 18, 2005 to, inter alia, Debtor at his Philadelphia residence and the Wyomissing mailing address. Doc. No. 37.

With the dismissal order final and no bankruptcy stay as an impediment, ABN went forward with a sheriff's sale of the Property on November 1, 2005. The day before the sale Kutzer filed some type of petition in state court seeking to stay the sale. After a chambers conference followed by a hearing in open court, the state court judge ruled against the Debtor.[6] The sale went forward and the Property was sold to ABN for $71,000. Debtor claims that the auctioneer overlooked an $80,000 bid by his brother who was present with $10,000 and was prepared to bid and able to pay up to $100,000 for the Property. On these facts, Debtor filed this new bankruptcy and commenced an adversary proceeding (the "Adversary") to set aside the sale as a fraudulent conveyance and/or preferential transfer, contending the Property is worth $175,000. He testified that if the sale were avoided, he intended to pay AMB in full from his deferred compensation plan. Notably Debtor's Chapter 13 plan does not so provide but merely has him making payments of $35 per month

---

[6] It is not clear from Debtor's testimony whether there was a second proceeding brought before the state court but it is clear that Kutzer extracted more money out of Debtor to handle these matters and treated him with disrespect and lack of professionalism. See Transcript at 18-24. Whether that conduct raises to the level of a violation of the Code of Professional Responsibility will depend on Kutzer's response to Debtor's charges. However, Debtor's efforts to deflect blame for the failure of his cases from himself to Kutzer cannot succeed. Debtor, not Kutzer, had the obligation to pay the mortgage. If Kutzer did not do an adequate job of representing Debtor in resisting ABN and the Trustee's motions in this case, then his quarrel is with Kutzer. ABN should not have to suffer for the actions of Debtor's counsel.

for 60 months, a sum which in the aggregate neither pays ABN nor his other secured creditor American Suzuki. Exhibit M-1.

Having heard Debtor's sworn testimony that he was capable of saving his Property at the sale if only his brother's bid had been recognized, I asked counsel for ABN whether it would allow Debtor to buy back his Property for the amount of its debt. Exhibit M-6. On questioning by ABN's counsel, Debtor stated that he was prepared to pay the outstanding loan amount of $78,000 to recover his Property, and I reimposed the stay on a preliminary basis to allow Debtor to raise the $78,000 that he claimed was available to settle the matter. Debtor was given 30 days with a further hearing set for January 17, 2006 to verify that he had performed.

On January 17th, Debtor testified that he had not been able to raise the $78,000. There was no explanation as to why no funds were available from the brother who allegedly was prepared to expend $100,000 to buy the Property at sheriff's sale had his bid been recognized. Rather Debtor testified that he contemplated utilizing his deferred compensation funds for the payment, but was surprised to learn that they were not readily available. According to Debtor, he had never inquired as to how he could gain access to that money and only learned after the hearing that he needed to submit a hardship letter and wait six to eight weeks for Board approval. He claimed to have submitted that hardship letter on December 21, 2005 but failed to make a copy. As evidence of the availability of these funds, he proffered a statement of the City of Philadelphia Municipal Employees Deferred Compensation Plan showing a balance as of December 31, 2004 of $82,168.57. Exhibit D-3. While he stated he receives a statement twice a year, he had no more recent statement of

-5-

his account balance which he believed was even greater now due to payroll deductions. Unfortunately Debtor's testimony is belied by his Schedule B verified on November 21, 2005 stating that his deferred compensation program account value is $4,000. There is also no disclosure of the payroll deductions although his most recent pay stubs indicate that funds are being withheld for that purpose. Debtor also testified that he contacted another lender for a back up loan but would need another 30-60 days for its consummation.

**DISCUSSION**

The Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), 11 U.S.C. § 101 et seq., made sweeping changes to the rights and remedies of participants in bankruptcy cases filed, as this case was, after the effective date of BAPCPA on October 17, 2005. As its name implies, Congress sought to address what it perceived as abuses of the bankruptcy laws by certain debtors. One such abuse it identified was the invocation of the automatic stay by debtors who have no valid bankruptcy objective in filing their petitions but merely seek to obstruct the exercise of non-bankruptcy remedies by their creditors.[7] Many debtors do not comply with the Code requirements for documentation, payment of fees, attendance at § 341 meetings and/or if applicable, payment of the Chapter 13 trustee. While dismissal of the case inexorably follows, the debtor has

---

[7] The automatic stay of § 362 has been describes as one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors by stopping all collection efforts, all harassment and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan or simply to be free of the financial pressures that drove him into bankruptcy. H.R.Rep. No. 595, 95th Cong., 1st Sess 174-75 (1977); S.Rep. No. 989, 95th Cong. 2d Sess. 49-50 (1978). It also protects creditors by preventing a race to seize the debtor's assets. Id.

nonetheless gotten the benefit of the automatic stay to block the secured creditor's sheriff's sale or an eviction by the landlord. Most commonly in Chapter 13, after dismissal and the rescheduling of the creditor's action, another case may follow – and another – and another –unless and until the cycle is stopped by an order barring a further bankruptcy. As a result of a focused program by the United States Trustee, the concerted efforts of institutional secured creditors and the flexibility of the prior law, the system had responded to this abuse with court orders barring a further petition being granted in order to bring the system back into balance and ameliorate the harm to victims of the abusive cases.

These abuses were also the focus of the legislative reform that is now embodied in BAPCPA. The statute takes a different approach to the problem than that which the courts had implemented. Rather than bar serial filings, the statute alters the incentive that gives rise to the petition, i.e., the availability of the automatic stay. See 11 U.S.C. § 362(b), § 362(c)(3), § 362(d)(4), § 362(h)(1). New subsection (c)(3) is applicable in this case. It provides that if a case under Chapter 7, 11 or 13 is filed by an individual and if a case of the debtor was pending within the preceding 1 year period but was dismissed, the stay of § 362(a) shall terminate with respect to that debtor on the 30th day after the filing of the later case.[8] The debtor may move to continue the stay upon notice and hearing provided such motion is made and heard before the stay expires by operation of law.[9] The court may

---

[8] This general rule contains an exception not relevant here.

[9] It is therefore incumbent upon debtor's counsel to file the § 362(c)(3) motion contemporaneously with the petition. While I have granted an expedited hearing in this case because of the newness of the law, I do not intend to do so in the future. As Debtor and his counsel are aware of the necessity of filing the motion as of the petition date, it would be inappropriate to
(continued...)

grant such motion only if the movant demonstrates that the filing of the later case is in good faith as to the creditors to be stayed. 11 U.S.C. § 362(c)(3)(B). For the purpose of this subparagraph B, "a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence)" if certain facts are shown. A different test applies whether the stay is being continued as to all creditors or a specific creditor. Id. § 362(c)(3)(C). As noted above, it is not clear whether Debtor is seeking an extension as to all creditors or just ABN. However, I find that Debtor's latest case is presumptively filed not in good faith on either grounds.

As to ABN, the case is presumptively filed not in good faith if as of the date of dismissal of the prior case, a motion for relief from stay was either pending or had been resolved by terminating, conditioning or limiting the stay as to actions against such creditor. Id. § 362(c)(3)(C)(ii). On the date of dismissal of Debtor's prior case, ABN's motion for relief had been granted. Exhibit M-5. As to creditors generally, I find two statutory reasons for applying the presumption. First, there has not been a substantial change in Debtor's personal or financial affairs since the dismissal of the prior case. The only change is the identity of Debtor's counsel. Indeed Debtor's circumstances have worsened in that the Property which is the *sine qua non* of this and his prior cases is now owned by ABN. Debtor does not state that he is now more able to perform obligations that he did not perform in two prior cases. Rather his new attorney has fashioned a legal theory which

---

(...continued)
compromise the adequacy of notice by expediting a § 362(c)(3) motion. In re Wilson, 2005 WL 3693206 (Bankr. E.D. Tenn. Dec. 5, 2005) (motion to extend stay not served 20 days prior to the hearing was insufficient to satisfy creditors' due process rights).

seeks to avoid the ultimate consequence of Debtor's failed cases, the loss of his Property. Second, there is no other reason to conclude that the case will result in a fully performed Chapter 13 plan.  While the basis for this new case is to attempt to avoid a completed foreclosure sale of the Property as a fraudulent conveyance or preference, Debtor's Chapter 13 plan, as discussed below, fails to provide for the payment of ABN if he were successful.  Debtor's payments of $35 per month for 60 months do not even satisfy secured debt other than that which would be owed to ABN if Debtor successfully avoided the foreclosure.

In order to rebut the presumption applied here that the case was filed not in good faith, Debtor must provide "clear and convincing evidence" to the contrary.  Clear and convincing evidence is that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence "so clear, direct and weighty and convincing as to enable the [fact finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."  U.S. Fire Ins. Co v. Royal Ins. Co., 759 F2d 306, 309 (3d Cir. 1985).  Nor does a finding of good faith mandate that the court order that the stay be extended. Rather the court may then exercise its discretion to extend the stay.  Id.  On the contrary, the absence of proof of good faith requires that no extension of the stay be ordered.

I turn now to the evidence elicited from Debtor to determine whether the presumption that the case has been filed not in good faith has been rebutted.  The essence of Debtor's position is that he can recover the Property that has been sold by the sheriff through

the vehicle of the Adversary and then pay off ABN's judgment through a Chapter 13 plan. The Adversary avers that Debtor's brother brought funds to bid $80,000 at the sheriff's sale but due to a commotion in the meeting room, his bid was ignored and the Property, alleged to be worth $175,000, was sold to ABN's attorney on the writ for $71,000. It is uncontroverted that Debtor never challenged the validity of the sale in the state court. On these facts, Debtor seeks to set aside the sale as a fraudulent conveyance and a preference. Exhibit D-1.

Examining the Complaint, the Chapter 13 plan and considering Debtor's testimony at both hearings, I easily conclude that Debtor has not sustained his burden under § 362(c)(3) and that to subject ABN and any other creditor to further delay to allow the prosecution of this questionable Adversary would be an abuse of the bankruptcy process.

I turn first to the merits of the Adversary which is the foundation of Debtor's "reorganization."[10] Debtor lost this Property on November 1, 2005 through a validly conducted sheriff's sale which his attorney was unable to stop notwithstanding last minute efforts in the state court. In In re Knapper, 407 F.3d 573 (3d Cir. 2005), the Third Circuit rejected a debtor's attempt to recover a property after it had been sold at a sheriff's sale explaining that the Rooker-Feldman doctrine precludes a federal court from adjudicating

---

[10] As I have noted before, it is a common strategy of certain debtor's counsel to file an adversary proceeding and urge that the pendency of that action requires the Chapter 13 case to continue and any efforts for stay relief or case dismissal to be suspended until its adjudication. Viewing that approach, especially when it has become the *modus operandi* of an attorney, as a delaying tactic, I have not unquestioningly accepted the familiar "adversary pending" as a defense to a trustee's motion to dismiss or creditor's motion for relief. Rather I require the plaintiff/debtor to demonstrate that there is a probability of success on the merits and that the adversary was not filed merely to obstruct. This burden is even heavier where the debtor seeks to continue the automatic stay.

a claim that was actually litigated in state court or one that is inextricably intertwined with the state adjudication. Id. at 580. In other words, a lower federal court has no power to take action that would prevent a state court from enforcing its orders. However, it is Knapper's other holding that is implicated by this Complaint. Knapper claimed the sheriff's sale of her property was a fraudulent conveyance under state law and could be avoided under 11 U.S.C. § 544. While not stating that a bankruptcy court can never use § 544 to avoid a state court judgment, the Third Circuit found no authority for doing so in this case. It noted that § 544 contains the trustee's avoiding power, the intention being to allow the recovery of property for the estate.[11] There, as here, the debtor sought to recover the property for herself to the prejudice of her creditor.

In Knapper, the Third Circuit noted that there was no discussion in Knapper's briefs of how the sheriff's sale could constitute a fraudulent conveyances. Here Debtor attempts an explanation. He states that the sheriff's sale contained irregularities in that his brother was present to bid $80,000 and the sheriff did not hear his bid and accepted one for $71,000. This "irregularity" is proffered to avoid the United States Supreme Court decision in BFP v. Resolution Trust Corp., 511 U.S. 531, 114 S.Ct. 1757 (1994) which holds that the price received at a mortgage foreclosure sale conclusively establishes "reasonably equivalent value" of the mortgage property, as long as requirements of state's foreclosure law were met. He then continues that as the Property is worth $175,000, the irregularly conducted sale for

---

[11] The naming of the Chapter 13 trustee as co-plaintiff did not cure that flaw since, as here, the trustee neither filed nor joined in the request for relief.

-11-

$71,000 was not for reasonably equivalent value and must be avoided and the Property returned to him.

When I heard this story at the first hearing, I offered Debtor, upon consent of ABN, the opportunity to remedy the supposed injury that occurred at the sheriff's sale. He was provided thirty days to buy the Property from ABN at the payoff amount of $78,569.72 as of December 8, 2005. Exhibit M-6. Debtor testified that he could and would do so. With the stay continued until the follow-up hearing in thirty days, that promise was nonetheless not fulfilled. Notwithstanding the contention that Debtor's brother was ready, willing and able to pay $80,000 to purchase the Property according to the rules of the sheriff's sale one month before, he is no where to be found (indeed he was not mentioned) at the hearing when the Property became available again. Rather Debtor claimed that there was a timing problem with his ability to provide the funds himself. He asserted that he has the money in his deferred compensation account but could not access it within the 30 days provided. Notably his Property has been threatened with foreclosure through three bankruptcy cases, and he never inquired about the procedure for withdrawing this money to save his home. Nor in thirty days could he garner any evidence to present at the continued hearing that he had that amount in the account. The statement he supplied is dated December 31, 2004. Exhibit D-3. While his pay stub evidences a deduction toward the fund, his Schedule I does not reflect it. Moreover his Schedule B filed on November 21, 2005 listed the asset with a value of $4,000,

not approximately $80,000 as he now contends.[12] It is clear to me that if there is any truth, and Debtor's testimony in this hearing did not inspire that conclusion, to the occurrence of this otherwise unchallenged bidding "irregularity" at the sale, it did not prejudice Debtor. He would not have been able to save his Property through the bidding process as evidenced by his inability to save it when given a second chance one month later.

Moreover, the second prong of the fraudulent conveyance theory is equally incredible. The Property is alleged to be worth $175,000 which is intended to support Debtor's averment that the $71,000 sheriff's sale price was not a fair equivalent value. Notably in Debtor's last bankruptcy case, Schedules filed on March 30, 2005 placed a value of $40,000 on the Property. This sudden and self-serving escalation in alleged value is hard to accept on its face. Moreover, it just does not make sense. With a Property worth $175,000 and given the opportunity to buy it back for $76,000, it is hard to conceive why Debtor could not raise the funds by borrowing against the Property. While he stated that he had sought a loan, he produced no evidence of any loan applications nor gave any specific details about his efforts to raise the money to save this valuable asset. He only noted that he did not believe it could be timely accomplished, and seemingly as a result abandoned any effort to raise the funds.[13]

---

[12] It may be that Debtor deliberately undervalued the asset which, if true, would be a misrepresentation in his schedules filed under penalty of perjury. In any event, he will be held to the sworn lower and more recent value.

[13] Nor has there been any application during this post-hearing period, now another 30 days since the stay expired, to perform his stated intention to pay off ABN.

With a house allegedly worth $175,000 and a deferred compensation account allegedly worth $80,000, I cannot conceive how Debtor could be in the position to lose his house at a sheriff's sale. If one accepts his values, it is inexplicable that he could not pay off ABN.[14] My disbelief concerning the values alleged by Debtor undercuts my willingness to keep the stay in place and hold this case open to allow Debtor to proceed on either the fraudulent conveyance or the preference count which are based on these values. If a debtor seeks to hold a creditor hostage to a third case based on an adversary proceeding which depends on valuation to succeed, he will have to do something more than merely plead value.

More significantly, even if the Adversary were successful, it proves nothing about the good faith of this new case. At best, a favorable outcome would only avoid the sale and return Debtor to the status he was in when his last case was dismissed for failure to make payments to the Trustee. That was precisely where he was when he filed his second case. To be given a third opportunity to treat ABN's debt under a Chapter 13 plan, Debtor must minimally show that there has been some change in circumstances that would establish that this case would be successful. In other words, as Debtor still has to treat that secured debt in a Chapter 13 plan, it is his burden to provide clear and convincing evidence that ABN will be paid. However, his Chapter 13 plan makes no provision to pay ABN. While the plan states that if he is successful in the Adversary, he will commence regular mortgage payments and amend the plan to cure the arrears to ABN, he has not demonstrated how that can be accomplished. To do so will require an additional amount of disposable income not apparent

---

[14] The only other explanation is that he simply does not want to pay his son's debt.

-14-

from his Schedules I and J which show monthly income of $2,100 and expenses of $2,065. According to these documents, sworn under penalty of perjury, $135 is his monthly disposable income. Where is the cure payment coming from? If Debtor has undisclosed additional income to make the extra payment, why isn't it included in the plan payment now? For a $35 per month plan payment he seeks to stay ABN from the exercise of its state law remedies, living rent free in the Property he no longer owns while he litigates his dubious Adversary to no purposeful end. I find this case which is premised on such questionable strategy not to be in good faith and not meriting further bankruptcy relief.

An Order consistent with the foregoing Memorandum Opinion shall be entered.

DIANE WEISS SIGMUND<br>
Chief U.S. Bankruptcy Judge

Dated:  February 24, 2006

**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| WARREN L. ELLIS, SR., | : | Bankruptcy No. 05-39345DWS |
| | : | |
| Debtor. | : | |

## **ORDER**

**AND NOW**, this 24th day of February 2006, upon consideration of Debtor's Motion for Continuance of the Stay Beyond 30-Day Period (the "Motion"), after notice and hearing and for the reasons set forth in the accompanying Opinion;

It is hereby **ORDERED** that the Motion is **DENIED.**

DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

<u>Copies to</u>:

David A. Scholl, Esquire
Regional Bankruptcy Center
Law Office of David A. Scholl
#6 St. Albans Avenue
Newtown, PA  19073

Peter J. Mulcahy, Esquire
PHELAN HALLINAN & SCHMIEG, LLP
1617 JFK Boulevard
Suite 1400
Philadelphia, PA  19107

William C. Miller, Esquire
Standing Chapter 13 Trustee
P. O.  Box 40119
Philadelphia, PA 19106-0119

Dave P. Adams, Esquire
Office of the U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia, PA 19107